Thank you, your honor. May it please the court, my name is James Hudson and I represent the appellant Raymond Pollock in this matter. This is a case for involving long-term disability benefits under ERISA. And the specific issue is whether or not the amount of benefits Mr. Pollock was entitled to was subject to offsets for other benefits received, namely Social Security and workers' compensation. The appellant's position on the facts of the case is set forth in painstaking detail in our opening brief where we actually cite to the deposition testimony that was submitted to the district court regarding primarily two witnesses produced by the plan who had supposedly the superior knowledge as to the contents of the plan. To summarize, we believe the evidence showed, first of all, there was no unum policy of insurance in effect at the time of Mr. Pollock's disability in August of 2004. Can I stop you there? If there was no policy in effect, why would he be entitled to benefits under the policy? Because there was a plan in effect, and that was the summary plan description on the Secure Benefits Online website to which Mr. Pollock was directed by his employer. What's the difference between the plan and the insurance policy? Excuse me, Your Honor. What's the distinction you're making between a policy and a plan? Well, simply that you can have the – there can be an ERISA plan without an actual policy. So, okay. So your argument is that there was a plan that didn't have the offset provision in effect, but not the policy wasn't written down or finalized yet that included the – Okay. And under the Pfeiffer v. Prudential case, which has – it's a Second Circuit case we cited with facts very similar to this. And in that case, they found that a summary plan description was the plan. A summary plan description in effect at the time of the disability was the plan, and that's our position here. Secondly, there is an issue that – Am I correct in understanding, Counsel, that when the appellant went into what he believed and testified as the secure website and he printed out certain pages that were then submitted to the district court as evidence, it was only a partial printing of what he viewed in this particular website? That is correct, Your Honor. So then that enabled the defendants to argue that there were other portions, for example, the key provision setting out the offset that he just didn't print out. That's correct. That is part of their argument. And your challenge on appeal is really to the factual findings by the district court, which are reviewable for clear error only. You're not challenging any conclusions reached by the court. Is that correct? Well, we are challenging conclusions of law by the court, specifically the court adopting an abuse of discretion standard. The district court adopted abuse of discretion standard, which we don't think was appropriate because it – Well, it really then ties to the factual argument of whether there was a plan in place or a policy. So depending on which factual version the district court accepts, and here she accepted the defendant's version that there was this policy in effect at the time, then that then drives the standard of review. It does, Your Honor, but there's one other issue on the standard of review I'd like to bring up, And that is the fact that the district court refused to adopt conclusions of law that we submitted to the effect that the insurer or the plan has the burden of proof of proving limitations on coverage, such as these offset limitations. And the court refused to adopt our submission that the burden of proof was on the plan. And I think the court's – actually, the court's findings and conclusions are silent on the burden of proof. But I think a fair reading of all the findings and conclusions was that the court put the burden on the claimant, Mr. Pollack, rather than the plan. If the burden of proof is on the plan, then the plan has the burden of showing these limitations that were in the website that was the secure website reviewed by my client. And so one could even disregard my – if that's true, if they have the burden of proof, one could even disregard my client's testimony about what was on there and still find in favor of my client, because they would have the burden of proof of establishing that the secure website contained offset limitations, and they never presented any evidence that it did. Well, the defendant presented evidence indicating that there was only ever one place that basically set out the description, and the secure website had a link to an outside site that then set out the terms of the plan or policy. What was your best evidence presented that controverted that piece of evidence presented by the defense? Well, my client testified, and it was consistent with what the person's most knowledgeable testified, that he was directed to the secure website. He had to get in with passwords, which was geared to give him detailed information about his benefits. And he was never directed or told to link to another website or go to another website. He didn't even know there was another website open to the public that existed until we actually started taking the depositions in this case that the district court judge ordered of the person's most knowledgeable. So that would be my evidence. His direction from his employer at all times was to the secure website, and that's what he looked at. Let's see. Again, let me reiterate on the standard of review. Our position is that the case under either clearly erroneous standard of review or de novo should be reversed because we believe that the evidence that we've cleared, outlined, as again, in painful detail, supports the proposition that the plan was on a secure website, that my client was directed to that website, and that that website did not contain offset provisions, or at least that there's no evidence that it contained offset provisions. I would also say the abuse of discretion standard adopted by the district court is inappropriate in a case like this, where much of the evidence that the district court relied on was developed while this case was in discovery and trial, and after the plan administrator had made their decision. In other words, the court, the district court here, in making its findings, relied on evidence from the person's most knowledgeable about the websites, the secure website, the unsecure website. None of that evidence was before the plan administrator. So I don't see how the court could or should apply an abuse of discretion standard in making its decision when much of the evidence relied on was never even in front of the plan administrator. With that, I'm concluding. I'd like to reserve the rest of my time. You may do so. Certainly. Good morning. May it please the Court. I am James Mullins, counsel for UNUM, the appellee in this case. First, to the issue of the burden of proof. What appellant did not say is that the court below found that the plaintiff had the burden of proof in this case because the court did not. What the court did was consider all of the evidence that was placed in front of it. In finding number 12, the court specifically stated that the great weight of the evidence supported the finding that the entire summary plan description, including the offset provisions, was available to plaintiff as of November 3, 2003. The court also reminded the plaintiff after the post-trial motions that addressed these same factual issues that it had fully weighed and considered the evidence submitted by the plaintiff. So I think that the court considered everything that either side submitted at any given point in time and didn't put the burden solely on the plaintiff to come up with the evidence that was relevant. One minor misstatement, counsel said that the policy was effective 2006. I think it was actually effective in 2004. Plaintiff's counsel received a copy of it in 2006. Appellant refers to the Pfeiffer case. The Pfeiffer case is, of course, not controlling authority. And for Pfeiffer to be of any benefit to the appellant at all, one has to accept, first of all, his version of facts. That is, the only thing available was these three or four pages that are concededly incomplete, and therefore that is what is controlling for the life of his disability claim from 2003 until he turns 65 years old. That's not the case here. The overwhelming evidence is that the SPD was posted on November 3, 2003, before he became disabled. Pfeiffer isn't applicable. There's some confusion about the secure and the unsecure website issues. To some degree, that's sort of self-inflicted. But for clarity's sake, Ms. McMillan testified below that the secure website was really the kind of secure website that you'd expect as an employee. It would contain your personal information, health insurance information, what your health insurance costs, your 401K and things of that sort. The unsecure, what they call the benefits online section, is where the SPD was found. And that was available to Mr. Pollack in 2003. Well, he doesn't recall and testified ever being directed to an outside website. I don't suppose it was technically possible to present documentary evidence of that. You presented PMK testimony to show that there was only one website. Is that correct, that there was no documentary evidence to corroborate your witness' claim, that it was ever only one place that described the benefits, and you can get through that by clicking on something that redirected you from the secure website outside to a regular separate website? There's really two responses to that, I guess. One is, first, they did produce the documents that related to the summary plan description. They were printed from online, and I don't know if that qualifies as documentary evidence. But there was a witness who testified, I gave these to the guy who posts them. I know he posted them on November 3, 2003. I know it's the same thing I gave him because I went back and compared them line to line. But the second and perhaps more interesting answer is that the only other documents that were relevant to that issue were the documents that Mr. Pollack produced. Unfortunately, those documents did not have the URL address on the bottom of them. The fact that the district court noticed below invited Mr. Pollack to then give us the documents so we could see what the web address was, and that's something he's declined to do. So the only documents that were not produced that might have been produced that were relevant to that issue are in the hands of Mr. Pollack, who chose for whatever reason not to produce them. And I guess in response to counsel's brevity, I'll be as brief as I can, but the final point is the one that you mentioned, and that is this is really a factual dispute. There's no issue of law involved here. There's nothing new or different. It's just a simple factual dispute that was exhaustively addressed by the trial court to the point of ordering depositions, hearing post-trial motions, and reaching a fairly well-reasoned conclusion. It's addressed under the clearly erroneous standard, and there is no evidence or argument before the court that the trial court was clearly erroneous. Having said that, unless there are other questions, I will submit. Thank you very much, counsel. Thank you, Your Honor. Briefly, on the burden of proof issue, I beg to differ with counsel. We submitted proposed revised findings of fact and conclusions of law to the district court that specifically specified that the insurer has a burden of proof on conclusions or limitations to coverage, and the district court refused to adopt those conclusions of law. And I believe the record fairly read indicates that the burden was put on us rather than where it should have been, and that is on the insurer or the plan. With respect to counsel's comment about the policy being in effect in 2004, that is not correct. Prior to 2006, there were only draft policies that were ever produced. So I think the record is clear. There was no policy in effect at the time of Mr. Pollack's disability. Regarding this one or two benefits websites, the court specifically found that there was only one benefits website. And from the discussion I heard here today from the court, and it sounded like counsel, there seems to be a consensus that the testimony from the person's most knowledgeable was very clear that there were two websites. Which directly, one secure and one insecure, which directly contradicts one of the court's key findings of fact, that there was only one website. Lastly, with respect to the documents that Mr. Pollack produced, which was part of the printout of the website he reviewed, those documents were positively identified by one of the PMKs, Anna Rodriguez, as being from the secure website. And that testimony is in our briefs. And so she identified, she not only admitted there were two websites, but she identified the portions that Mr. Pollack printed out and we put into evidence as being from the secure website. So unless the court has any other questions, I will submit. All right. Thank you very much, counsel. Pollack v. Northrop Grumman Health Plan will be submitted. We'll take up McShane v. Cate.
judges: Wardlaw, Bybee, Nguyen